UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
SPYRO GERMENIS, :
:
     <u>Plaintiff</u>, :
:
 -v.- : 08 Civ. 8968 (GEL)
:
N.Y.S. DEPARTMENT OF CORRECTIONAL : **OPINION AND ORDER**
SERVICES, BRIAN FISCHER-COMMISSIONER :
N.Y.S. DEPARTMENT OF PAROLE, GEORGE :
B. ALEXANDER-COMMISSIONER OF :
PAROLE, :
:
     <u>Defendants</u>. :
:
------------------------------------------------------------x

Spyro Germenis, Woodburne, NY, plaintiff pro se.

Andrew M. Cuomo, Attorney General of the State of New York (Maria Barous Hartofilis, Assistant Attorney General, of Counsel), New York, NY, <u>for defendants</u>.

GERARD E. LYNCH, <u>District Judge</u>:

  Pro se plaintiff Spyro Germenis, a New York State prisoner, brings this action under 42 U.S.C. § 1983 alleging that defendants, the New York State Department of Correctional Services ("DOCS"), the New York State Division of Parole ("DOP"), and the head of each of those agencies, DOCS Commissioner Brian Fischer and DOP Chairman George B. Alexander, violated his constitutional rights to due process and equal protection by denying him fair parole hearings from 1997 to 2007, insofar as his sentencing minutes and other unspecified documents were not considered, resulting in the denial of his parole. Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, defendants' motion will be granted and the complaint dismissed.

**BACKGROUND**

In 1983, Germenis pled guilty to murder in the second degree and was sentenced to fifteen years to life in prison. (Hartofilis Decl. Ex. A.)[1] Germenis first appeared before the parole board in September 1997, at which time he was denied parole. (Hartofilis Decl. Ex. B.) Between that time and September 6, 2005, he appeared before the Parole board four more times and was denied parole on each occasion. (Hartofilis Decl. Exs. B & G at 1.) A sixth parole hearing was scheduled for September 11, 2007. (Compl. at 2.) At that time, however, the Parole board informed Germenis that his sentencing minutes were not in the DOP's possession and the hearing was accordingly adjourned three months, until December 11, 2007. (Compl. at 2.)

During this adjournment, a parole officer informed Germenis that the DOP could not obtain his sentencing minutes because the stenographer had died and did not leave any notes. (Id.) Germenis's sixth parole hearing went forward as scheduled on December 11, 2007. (Hartofilis Decl. Ex. E (minutes of parole hearing); see also Compl. at 1.) Despite the complaint's intimations to the contrary, the transcript of this hearing reveals, and Germenis ultimately concedes, that the DOP did have copy of Germenis's sentencing minutes as of this sixth parole hearing. (Hartofilis Decl. Ex. E. at 2-4; see also 3/11/09 Germenis Aff. ¶ 4.)[2] These sentencing minutes, in fact, were reviewed in detail at this parole hearing, but did not affect the

---

[1] The following recitation of facts is drawn from the allegations in the complaint and documents integral to it, as well as from undisputed facts in the public record. They are construed in the light most favorable to Germenis, and his allegations are assumed to be true for purposes of this motion to dismiss, except when they are inconsistent with the documentary record.

[2] In fact, although not noted in the complaint, Germenis later divulges that he provided a copy of his sentencing transcript to the parole officer who informed him of the DOP's inability to obtain a copy of this document. (3/11/09 Germenis Aff. ¶ 3.)

Parole board's ultimate decision to deny Germenis parole once again. (Hartofilis Decl. Ex. E at 2-4, 17.) This is not surprising, given that the sentencing transcript itself reveals that the sentencing judge made no recommendation regarding Germenis's parole and simply imposed the indeterminate term of fifteen years to life negotiated by the parties in the plea agreement. (Hartofilis Decl. Exs. A.)

Although recognizing that his sentencing minutes were considered by the Parole board in December 2007, Germenis infers from the fact that defendants lacked the sentencing minutes in September 2007 that the minutes were not considered at his first five parole hearings. He further posits that still other documents that are supposed to be considered in parole determinations under New York law may be missing from his file. (Compl. at 2.) Germenis contends that these deficiencies, which Germenis alleges to have resulted from the defendants' "gross negligence," violated his due process and equal protection rights and deprived him of any meaningful chance of being paroled throughout the years. (Id. at 2-4.)

Germenis commenced this action on September 17, 2008,[3] seeking compensatory and punitive damages, plus an injunction ordering defendants "to discontinue the practice of conducting a [p]arole consideration hearing without having the statutorily mandated documents and *all* required documents needed to properly review, conduct and decide a [p]arole consideration request." (Compl. at 4.) Defendants moved to dismiss the action, in part, for lack of subject-matter jurisdiction, and, in its entirety, for failure to state a claim upon which relief can be granted. Germenis timely opposed the motion and, along with his opposition papers,

---

[3] A pro se prisoner is deemed to have filed his complaint on the date he delivers it to prison officials to be mailed, Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993), modified on other grounds, 25 F.3d 81 (2d Cir. 1994), and Germenis declares that he duly delivered the complaint to prison authorities on September 17, 2008. (Compl. at 5).

purported to amend the complaint to add allegations that his December 11, 2007 parole hearing was tainted, not only for a potential lack of consideration of all relevant documents, but also because one of the three commissioners who denied Germenis parole has since been convicted of sex crimes.  (See Am. Compl. attached to P's 3/11/09 Opp'n.)  Additionally, having now admitted for the first time in his opposition papers that the parole board did have his sentencing minutes at the December 2007 parole hearing, the amended complaint also asserts, without elaboration, that the parole hearing was not recorded and that the hearing transcript does not accurately reflect what occurred.  (Id.)

Apart from this newest allegation concerning the accuracy of the hearing transcript, the question to be decided, as Germenis puts it, is what remedy exists for defendants' mishandling of the sentencing minutes – and perhaps other documents – for some period of time, and the resulting inability to consider those documents in the parole determinations.  The answer, in this federal forum at least, is none, and the complaint accordingly will be dismissed.

## DISCUSSION

### I. Motion to Dismiss Standard

Defendants move to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  While recognizing that it is often preferable to consider Rule 12(b)(1) jurisdictional challenges before any other arguments for dismissal, e.g., United States ex rel Kreindler & Kreindler v. United Tech. Corp., 985 F.2d 1148, 1155-56 (2d Cir. 1993), here, because defendants' arguments that the complaint must be dismissed pursuant to Rule 12(b)(6) are dispositive of the action, whereas the Rule 12(b)(1) arguments, even if fully meritorious, would only serve to hive off various aspects of the litigation, the following analysis will be limited to the legal sufficiency of Germenis's claims under Rule12(b)(6).  See Jones v. Georgia,

725 F.2d 622, 623 (11th Cir. 1984) (noting that "exceptions" to this "generally preferable approach" exist, inter alia, "when the plaintiff's claim has no plausible foundation" (internal citations omitted)), cited with approval in Kreindler, 985 F.2d at 1156.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims for relief. See Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In considering the legal sufficiency of the claims, a court must accept as true all well-pleaded facts in the complaint, "as supplemented by undisputed facts that are matters of public record." State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 (2d Cir. 2007). Additionally, a court may also consider documents that are "integral" to the complaint, even if neither physically attached to nor incorporated by reference into the complaint. Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006), quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2001). While a court evaluating a motion to dismiss must always draw all reasonable inferences in plaintiff's favor, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 93 (2d Cir. 2007), here, because plaintiff is proceeding pro se, the duty is amplified and the factual allegations must be construed liberally "to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

The notice-pleading standard of the Federal Rules of Civil Procedure requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007). This requires, at a "bare minimum," that the plaintiff "provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." Goldstein v. Pataki,

516 F.3d 50, 57 (2d Cir. 2008) (internal quotations omitted).  Although "[a] pro se complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," id. at 570.

## II.     Due Process

Germenis contends that his parole hearings did not comport with due process because all required documents were not factored into the parole determinations.  As Germenis recognizes, however, a prisoner's due process rights in regards to parole are circumscribed.  "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." Barna v. Travis, 239 F.3d 169, 170 (2d Cir. 2001) (per curiam), citing, among other cases, Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex, 442 U.S. 1, 11-13 (1979).  The Second Circuit has repeatedly found that New York's parole scheme, which affords the DOP discretion to grant or deny parole, "is not one that creates in any prisoner a legitimate expectancy of release."  Id. at 171; see also Booth v. Hammock, 605 F.2d 661, 664 (2d Cir. 1979) ("It is apparent that New York's parole provisions . . . do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist.").[4]  While the statutory provisions

---

[4] The parole statute explicitly states:

> Discretionary release on parole shall not be granted merely as a
> reward for good conduct or efficient performance of duties while
> confined but after considering if there is a reasonable probability
> that, if such inmate is released, he will live and remain at liberty

establish "guidelines . . . to structure the exercise of discretion, no entitlement to release is created." Booth, 605 F.2d at 664.

Although New York prisoners do not have a right to parole, and the full panoply of constitutional protections that would accompany such a right, the due process clause nevertheless extends to provide a "federally-protected liberty interest in . . . not being denied parole for arbitrary or impermissible reasons." Mathie v. Dennison, No. 06 Civ. 3184, 2007 WL 2351072, at *6 (S.D.N.Y. Aug. 16, 2007), quoting Brown v. Thomas, No. 02 Civ. 9257, 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003), citing in turn Meachum v. Fano, 427 U.S. 215, 226 (1976); see also e.g., Sing-Pao v. Connolly, 564 F. Supp. 2d 232, 242 (S.D.N.Y. 2008) (New York inmates' "Due Process Rights guaranteed by the Fourteenth Amendment are limited to not being denied parole for arbitrary or impermissible reasons." (internal quotations omitted)); Bottom v. Pataki, No. 03 Civ. 835, 2006 WL 2265408, at *5 (N.D.N.Y. Aug. 7, 2006) ("[A]n inmate may only bring a due process claim if the denial of parole is either arbitrary or capricious."). Although one court in this district has stated that an inmate has a due process right to a parole decision made in accordance with a state's statutory criteria, Graziano v. Pataki, No. 06 Civ. 0480, 2006 WL 2023082, at *7 (S.D.N.Y. July 17, 2006), "[t]he argument that a disregard of governing state law inherently renders a parole decision arbitrary or procedurally flawed proves to much. If such an argument were accepted, every state law requirement would ipso facto be incorporated into federal constitutional law." Mathie, 2007 WL 2351072, at *8.

---

> without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for the law.

N.Y. Exec. Law. § 259-i(2)(c)(A).

Rather, alleged violations of state law by and large "do not create interests entitled to due process protection, Cofone v. Manson, 594 F.2d 934, 938-39 (2d Cir. 1979), and are matters for consideration by the state courts." Boothe, 605 F.2d at 664-65.

The crux of Germenis's complaint is that defendants deprived him of due process by not considering all of the materials New York law requires to be considered in making parole determinations. Specifically, New York law existing at the time of Germenis's December 2007 parole hearing law directs that the following be considered in a parole decision:

> (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates;
>
> (ii) performance, if any, as a participant in a temporary release program;
>
> (iii) release plans including community resources, employment, education and training and support services available to the inmate;
>
> (iv) any deportation order issued by the federal government against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of correctional services pursuant to [N.Y. Corr. Law ¶ 147]; and
>
> (v) any statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated.

N.Y. Exec. Law. § 259-i(2)(c)(A) (2007). Additionally, for an inmate such as Germenis, whose minimum period of incarceration was fixed by the sentencing court, New York law mandates that the parole board consider:

> (i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate,

>and pre-sentence probation report as well as consideration of any
>mitigating and aggravating factors, and activities following arrest
>and prior to confinement; and
>
>(ii) prior criminal record, including the nature and pattern of
>offenses, adjustment to any previous probation or parole
>supervision and institutional confinement.

N.Y. Exec. Law. § 259-i(1)(a), as incorporated into § 259-i(1)(a) (2007).[5]

Germenis contends that defendants' failure to properly maintain his file with his sentencing minutes and possibly other documents, and the concomitant inability to consider these documents at his parole hearings, in violation of state law, impinged on his due process rights to fair hearings and any meaningful chance of release. These alleged state law procedural failures, however, are precisely the sort of matters that courts have found to present no cognizable constitutional claim. In Mathie, for example, this Court dismissed the plaintiff's due process challenge to the DOP's alleged failure, in light of an alleged blanket policy of denying parole to all violent felons, to consider all relevant evidence in making a parole determination. 2007 WL 2351072, at *7. Accepting that such a policy might violate state law, Mathie noted that "to the extent that plaintiff has a potential state law claim against defendants, § 1983 is not the proper vehicle, and this Court is not the proper venue, for vindicating such a claim." Id. Likewise, in Standley v. Dennison, No. 9:05-CV-1033, 2007 WL 2406909 (N.D.N.Y. Aug. 21, 2007), the court concluded that plaintiff's allegations of various procedural deficiencies in his parole hearings, "most notably, [a violation of] the requirement that the recommendations of the

---

[5] The law has since been amended to add, as an additional factor, "the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law," but otherwise remains identical in all relevant respects. N.Y. Exec. Law. § 259-i(2)(c)(A) (2009).

sentencing court be considered . . . . do not, in and of themselves, give rise to a violation of the Due Process Clause of the Fourteenth Amendment." 2007 WL 2406909, at *9. Thus, in the absence of any factual allegation to support a finding that the denial of parole was made arbitrarily or capriciously, the court dismissed the plaintiff's due process claims. Id.

Here too, accepting Germenis's factual allegations as true and construing them as liberally as possible in Germenis's favor, as must be done in considering this motion to dismiss, Germenis has failed to state a due process claim. A failure to properly maintain Germenis's file with each and every document New York law directs be included in the file, and a failure to consider one or more of those required documents at his parole hearings, without more, is insufficient to state a plausible claim that any defendant acted arbitrarily or capriciously in denying parole.[6] As in Mathie, Germenis "essentially . . . conflates a potential state law claim with a non-existent constitutional claim," Mathie, 2007 WL 2351072, at *7, for the "state procedural requirements that he alleges have not been observed do not create interests entitled to due process protection, and are matters for consideration by the state courts," Booth, 605 F.2d at 664-65 (internal citation omitted). Accordingly, Germenis's due process claim must be dismissed.

---

[6] Moreover, as is it not the sentencing minutes per se that the statute requires to be considered, but rather any "recommendations of the sentencing court," N.Y. Exec. Law. § 259-i(1)(a), as incorporated into § 259-i(1)(a), and as the sentencing judge made no such recommendations at sentencing, it is far from clear that a failure to consider the sentencing minutes would violate state law.

**III.     Equal Protection**

Germenis's equal protection claim also fails.[7]  "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).  Germenis, however, alleges no *intentional* mistreatment, but rather repeatedly characterizes defendants' challenged conduct as negligence.  (E.g., compl. at 4 ("The Defendants have caused through their negligence a violation of this Plaintiffs Civil Rights.").)  Nor do the factual allegations to support an inference of any intentional or purposeful discrimination.  Accordingly, the claim must be dismissed on this basis alone.

Further dooming the claim, Germenis does not expressly allege, and nothing in the complaint suggests, that any similarly situated individuals received more favorable treatment.  In fact, it is entirely unclear as compared to whom Germenis believes he was disparately treated.  The complaint provides no basis to infer that defendants are making impermissible classifications among people in any relevant respect.  In the absence of discrimination based on an impermissible classification, Germenis may still assert a "class of one" equal protection claim, "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Olech v. Village of Willowbrook, 528 U.S. 562, 564-65 (2000).  The mere fact that other inmates in the

---

[7] Contrary to defendants' assertion that Germenis impermissibly raises an equal protection claim for the first time in his opposition papers (D. Reply 2-3), the complaint in fact alleges that "defendants . . . violated this Plaintiffs Constitutional Right to Due Process and Equal Protection of the Law." (Compl. at 1).  Although the remainder of the complaint focuses on due process violations, in light of Germenis's pro se status, this cursory assertion of an equal protection violation is deemed sufficient to raise the issue in the complaint.  Accordingly, the legal sufficiency of such claim must be addressed.

New York state system may have had all relevant evidence considered in their parole determinations does not suffice to establish a class of one theory, even at the pleading stage, in light of the high degree of similarity required for such a claim, Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (plaintiff and comparator must be "prima facie identical"), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138, 139-40 (2d Cir. 2008), and the myriad of variables involved in parole decisions. Accordingly, Germenis has failed to state any equal protection violation.

### IV.     Purported Amended Complaint

Germenis's supplemental allegation that his December 2007 parole hearing was tainted because one of the participating parole commissioners has been convicted of an unrelated crime also fails to state a claim to relief. Even were the amendment procedurally proper, the claim must be dismissed because a legal proceeding is not invalidated because a judge or other official who participated was later found to have engaged in misconduct, or even crimes, unrelated to the matter in which he sat in judgment. Nor does the criminal conviction of one of the commissioners supply the necessary factual amplification to render Germenis's claim of a constitutional violation stemming from any of the alleged state law procedural deficiencies "plausible" under Twombly. 550 U.S. at 570.

As Germenis's failure to state a cognizable due process or equal protection claim disposes of the action, defendants' remaining arguments need not be considered.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Dkt. #10) is granted and the complaint is dismissed in its entirety. In accord with the concern articulated in Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009), that "pro se indigent litigants . . . have access, without cost,

to review the case law relied upon by a district court in ruling about the litigants' claim," id. at 79, and in light of Germenis's previous complaints of difficulty accessing unpublished cases from the prison library, defendants are directed to promptly provide Germenis with a copy of any opinion cited in this decision that is either unpublished or only available electronically.

SO ORDERED.

Dated: New York, New York
       September 9, 2009

_____
GERARD E. LYNCH
United States District Judge

Copy by mail to:

Spyro Germenis
83B1433
Woodburne Correctional Facility
99 Prison Road – P.O. Box 1000
Woodburne, N.Y. 12788